

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-12-2008

# Hill v. Lamanna

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3440

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Hill v. Lamanna" (2008). *2008 Decisions.* Paper 1617.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1617

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 06-3440
_____

MICHAEL W. HILL,

Appellant

v.

WARDEN JOHN LAMANNA
_____

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civ. No. 03-cv-00160)
District Judge: Honorable Sean J. McLaughlin
_____

Submitted Under Third Circuit LAR 34.1(a)
February 7, 2008
Before: SLOVITER, BARRY and GREENBERG, Circuit Judges

(Filed February 12, 2008)

_____

OPINION
_____

PER CURIAM

     Michael Hill, an inmate currently incarcerated at the Federal Correctional

Institution, Butner, North Carolina, seeks review of the district court's denial of his

habeas corpus petition pursuant to 28 U.S.C. § 2241.  For the reasons that follow, we will

affirm.

I.

In September 1995, Hill was sentenced by the District of Columbia Superior Court
to 7-21 years of imprisonment for armed manslaughter. Hill committed the manslaughter
offense while he was on parole from a 1987 District of Columbia narcotics sentence.
Following his sentencing, jurisdiction to make parole decisions regarding Hill was
transferred from the D.C. Board of Parole to the United States Parole Commission
("Commission"), pursuant to the National Capital Revitalization and Self-Government
Act of 1997 ("Revitalization Act"). See Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712
(1997) (codified as amended at D.C. Code § 24-131 (2001)).[1] In 2000, the Parole
Commission conducted an initial hearing to determine Hill's suitability for parole on his
1995 manslaughter sentence. At that hearing, the Commission denied parole and ordered
a rehearing in 28 months (April 2003). On March 27, 2003, the Commission conducted a
combined hearing to resolve whether to grant parole on the 1995 manslaughter sentence
and whether Hill violated parole on his 1987 narcotics sentence by committing the 1995
manslaughter.

The Commission, applying its revised 2000 guidelines, calculated Hill's Total
Guideline Range for the manslaughter offense as 185-217 months.[2] The Commission

--------

[1]Under the Revitalization Act, the Commission was given exclusive jurisdiction
over all D.C. felony prisoners and authorized to amend or supplement the 1987 D.C.
parole regulations. See D.C. Code § 24-131(c).

[2]With respect to the 1987 conviction, the Commission ordered that Hill receive no
credit for time spent on parole and that the unexpired portion of the drug sentence would

denied parole on the manslaughter offense and ordered Hill to serve 60 months until a reconsideration hearing to be held March 2008.

In May 2003, Hill filed a petition for writ of habeas corpus.[3]  After the magistrate judge recommended dismissing all claims, Hill filed an objection arguing, inter alia, that retroactive application of the 2000 guidelines violated the Ex Post Facto Clause.  The district court denied the petition on other grounds without addressing the ex post facto issue.  On appeal, we affirmed the judgment of the district court but remanded the case for consideration of Hill's ex post facto claim.  Hill v. Lamanna, 140 Fed.Appx. 441, 442 (3d Cir. 2004) (per curiam) (nonprecedential).  The district court denied the petition, and Hill filed a timely notice of appeal.

## II.

We have jurisdiction under 28 U.S.C. § 1291 and exercise plenary review over the district court's legal conclusions.  Furnari v. Warden, 218 F.3d 250, 254 (3d Cir. 2000).  We agree with the district court that Hill's ex post facto claim is without merit.

The Ex Post Facto Clause prohibits, inter alia, "laws that retroactively alter the definition of crimes or increase the punishment for criminal acts."  Cal. Dep't of Corr. v.

_____

commence running upon his release from his 21-year manslaughter sentence.

[3]At the time he filed his petition, Hill was within the jurisdiction of the United States District Court for the Western District of Pennsylvania, at the Federal Correctional Institution, McKean, Pennsylvania.  Despite Hill's transfer to a facility in North Carolina, we retain jurisdiction over his habeas corpus petition.  See Barden v. Keohane, 921 F.2d 476, 477 n.1 (3d Cir. 1990).

Morales, 514 U.S. 499, 504 (1995). Our previous decision in United States ex rel. Forman v. McCall, 776, F..2d 1156, 1158 (3d Cir. 1985) ("Forman I"), held that parole guidelines are laws for purposes of ex post facto analysis only when they are applied without "substantial flexibility." We have held that substantial flexibility was shown when a parole authority departed (either above or below) from the applicable guidelines in 25% of the cases before it. See United States ex rel. Forman v. McCall, 776 F.2d 1156, 1163 (3d Cir. 1985) ("Forman II"). Our cases do not precisely specify what level of departure below 25% would be necessary to show a lack of substantial flexibility. See id. at 1165 (Higginbotham, J., concurring). If a parole regulation in question is determined to be a law for ex post facto purposes, a potential parolee must demonstrate that the challenged parole regulation creates "a significant risk of increased punishment" when compared to action taken under the parole guidelines in effect when the petitioner was first sentenced. See Garner v. Jones, 529 U.S. 244, 257 (2000).

The Government presented evidence that the Commission departed from the guidelines in 17% of the cases. We need not decide whether this constitutes substantial flexibility, because Hill has failed to show the regulatory scheme creates a significant risk of increased punishment in his case. Hill mistakenly believes that his total guideline range of 110-140 months was increased to a range of 185-217 months under the 2000 guidelines. However, Hill's claim is unsupported by the record. At his previous hearing, under the 1998 guidelines, the Commission denied parole and notified Hill of the number of months until he would be eligible for a *rehearing*. Indeed, Hill's claim is factually

-4-

impossible as the "total guideline range" was in place for the first time during his 2003 hearing. See Paroling, Recommitting, and Supervising Federal Prisoners: Prisoners Serving Sentences Under the District of Columbia Code, 65 Fed Reg. 70,663 (Nov. 27, 2000) (to be codified at 28 C.F.R. § 2.80) Moreover, the 2000 guidelines did not alter the point system which is the basis for a parole determination, but rather converted the rehearing ranges into the total prison time that may be served by an inmate. Id. Hill's confusion stems from the Commission's notification of the total time he could potentially serve instead of merely the time until his next rehearing date. The changes in the guidelines, however, did not "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43 (1990).

Hill also alleged that the new guidelines changed his eligibility for a parole rehearing date. Specifically, Hill contended that under the 1998 guidelines he would have been entitled to a new hearing 18 to 24 months after his March 2003 hearing instead of 60 months under the 2000 guidelines. The Supreme Court rejected a similar argument in Morales, holding that an amendment authorizing the California parole board to defer annual parole hearings for up three years did not violate the Ex Post Facto Clause. Morales, 514 U.S. at 507-08. "Rather than changing the sentencing range applicable to covered crimes, the 1981 amendment simply 'alters the method to be followed' in fixing a parole release date under identical substantive standards." Id. As stated above, the substantive standards the Commission utilized remain unchanged under the 2000 guidelines. Therefore, the 60-month change created "only the most speculative and

-5-

attenuated" risk of increased punishment and thus did not violate the <u>Ex</u> <u>Post</u> <u>Facto</u> Clause. <u>Id.</u> at 509.

Accordingly, we will affirm the judgment of the district court. Appellant's motion to file our opinion under seal is denied.